## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |
|---|---|
| ANDRA CHERI MORELAND, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>PAL OF MINE CORP. *d/b/a* CLUB EMPIRE, *et al.*,<br><br>    Defendants. | Case No. 2:23-cv-211 |

### OPINION & ORDER

Before the Court is the plaintiffs' Motion for Default Judgment. ECF No. 10. The Court has considered the arguments in the briefing and concluded there is no need to hold a hearing on the motion. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J). For the reasons stated herein, the motion is **GRANTED.**

## I.    BACKGROUND

Plaintiffs Andra Cheri Moreland, Cielo Jean Gibson, Claudia Sampedro, Jessica Hinton, Ina Schnitzer, and Paola Canas are models who earn a living by licensing their images to companies, magazines, and individuals for use in advertising products and services. ECF No. 1 ¶ 16. As such, the plaintiffs place a high value on their reputation, "which is critical in order to maximize their earning potential, book model contracts, and establish each of their individual brands." *Id.* ¶ 17. To establish and maintain their brands, the plaintiffs are "necessarily selective concerning the companies, and brands, for which they model." *Id.* ¶ 17.

Defendant Pal of Mine Corp. owned and operated Club Empire ("Empire") in Virginia Beach, Virginia. ECF No. 1 ¶ 7. Empire "engaged in the business of selling alcohol and food in a sexually[]charged atmosphere." *Id.* ¶ 41. Empire used social media to promote its business and "attract patrons." *Id.* ¶ 43.

At various times between 2016 and 2018, Empire's promotional advertisements contained images of the plaintiffs. ECF No. 1-2 (screenshots of ads). Each image was posted without the respective plaintiffs' knowledge, consent, or authorization. ECF No. 1 ¶ 48. No plaintiff received any remuneration for Empire's unauthorized use of their images. *Id.* ¶ 49.

The plaintiffs filed their Complaint on May 16, 2023, alleging four causes of action: unauthorized use of likeness under Virginia law (Count One), Virginia statutory business conspiracy (Count Two), and Lanham Act claims for false advertising (Count Three) and false association (Count Four). The plaintiffs properly served Empire on July 5, 2023. ECF Nos. 1, 6. Empire failed to submit an answer or other responsive pleading. The Clerk entered default on September 29, 2023, and the plaintiffs filed their Motion for Default Judgment on February 6, 2024. ECF Nos. 9, 10. Empire did not file a response to the motion.

## II.    LEGAL STANDARDS

### A.    Motions for Default Judgment

Once a defendant is served process, they have 21 days to respond. Fed. R. Civ. P. 12(a)(1)(A)(i). When a plaintiff shows that the defendant has failed to file responsive pleadings, the clerk "must enter" a default, which amounts to an automatic admission of all allegations in the complaint that do not deal with the amount of damages. Fed. R. Civ. P. 55(a); Fed. R. Civ. P. 8(b)(6). After the Clerk enters a default, a plaintiff who seeks default judgment on a claim that is not for a sum certain must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

Whether to grant a motion for default judgment is a matter for the court's discretion. *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Co.*, 383 F.2d 249, 251 (4th Cir. 1967). The Fourth Circuit strongly prefers that courts adjudicate cases on the merits and has encouraged district courts to construe Fed. R. Civ. P. 55(c) liberally, in order to deny motions for default judgment. *E.g., Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 421 (4th Cir. 2010); *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). However, default judgment is warranted when a defendant fails to appear or participate. *Chafin v. Chafin*, 568 U.S. 165, 175 (2013); *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 106 (4th Cir. 2022). Courts in this district have found that default judgment should be granted when the defaulting party's unresponsiveness has halted the adversary process. *E.g., Walsh v. Heavenly Hands Home Healthcare LLC*, No. 2:22-cv-237, 2022 WL 18777533, at *5

(E.D. Va. Sept. 1, 2022); *Alstom Power, Inc. v. Graham*, No. 3:15-cv-174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016).

When a defendant, by defaulting, has admitted the facts alleged in the Complaint, the Court must determine whether the plaintiff's allegations are sufficient for judgment to be entered. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In other words, the court must decide whether the Complaint contains adequate factual material to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (applying the *Twombly* and *Iqbal* standard in the context of default judgment).

Finally, if the moving party seeks a judgment on damages, the court has discretion over how damages may be shown. *Transp. Dist. Comm'n of Hampton Roads v. U.S. Workboats, Inc.*, No. 2:21-cv-181, 2021 WL 8445262, at *4 (E.D. Va. Sept. 17, 2021); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—*other than one relating to the amount of damages*—is admitted if a responsive pleading is required and the allegation is not denied.") (emphasis added); *Alstom Power, Inc.*, 2016 WL 354754 at *2 (a defaulting defendant is not deemed to have admitted the amount of damages).

## B.    Injunctive Relief

A plaintiff seeking an injunction must establish: "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate [them] for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4)

that the public interest would not be disserved by a permanent injunction." *Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011). If a plaintiff satisfies these requirements, the Court still retains "equitable discretion" to grant or deny an injunction. *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (quotation marks omitted).

## III.  ANALYSIS

### A.  Appropriateness of Default Judgment

The Court would prefer to decide this case on the merits, but Empire's nonresponse makes that impossible. *Colleton Preparatory Acad., Inc.*, 616 F.3d at 417. Empire's failure to file responsive pleadings for over a year has brought the adversary process to a standstill. *See Walsh*, 2022 WL 18777533 at *5. Therefore, the Court finds default judgment appropriate in this case.

### B.  Count One: Unauthorized Use of Likeness

Default judgment will be granted on Count One because the Complaint states a claim for unauthorized use of likeness under Virginia law. Pursuant to Va. Code § 8.01-40(A), a plaintiff may recover damages when their "name, portrait, or picture is used" without their consent "for advertising purposes or for the purposes of trade."[1]

---

[1] The Virginia Supreme Court looks to New York courts for guidance on interpreting this statute. *Town & Country Properties, Inc. v. Riggins*, 457 S.E.2d 356, 362 (1995); *see Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734, 736 (E.D. Va. 1999) ("There is very little Virginia case law construing [Va. Code § 8.01-40], so courts applying Virginia law have relied upon the interpretation of the similarly[]phrased New York law as conducted by New York [c]ourts for guidance in construing this provision.") (citing *Town & Country Properties*).

"Any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture'" for purposes of an unauthorized use claim. *McPherson v. Kith Retail, LLC*, 214 N.Y.S.3d 677 (N.Y. Sup. Ct. 2024) (unpublished table opinion) (quotation marks and citation omitted); *see Cohen v. Herbal Concepts, Inc.*, 472 N.E.2d 307, 309 (N.Y. 1984) (requiring that "that plaintiff be capable of identification from the objectionable material itself"). "A [] portrait or picture is used 'for advertising purposes' if it appears in a publication which, taken in its entirety, was distributed . . . as part of, an advertisement or solicitation for patronage of a particular product or service." *Beverley v. Choices Women's Med. Ctr., Inc.*, 587 N.E.2d 275, 278 (1991).

The Court can reasonably infer that the images attached to the Complaint are recognizable representations of the plaintiffs. *See, e.g.*, ECF No. 1 ¶¶ 1, 15, 45 (referring to the pictures as "images of [the] [p]laintiffs"); *Cohen*, 472 N.E.2d at 309. The Complaint plausibly alleges that the images were used "for advertising purposes" both by demonstrating that they were posted to Empire's social media and by asserting that Empire "used [its] Facebook, Twitter, and Instagram accounts to promote the [c]lub[] and to attract patrons thereto." Va. Code § 8.01-40(A); ECF No. 1 ¶ 42; *see Beverley*, 587 N.E.2d at 278. Because the Complaint states a plausible claim under Va. Code § 8.01-40(A), default judgment will be **GRANTED** as to Count One.

## C.    Count Two: Statutory Business Conspiracy

The Court will grant default judgment on Count Two because the Complaint adequately pleads a cause of action for Virginia statutory business conspiracy.

6

Virginia Code § 18.2-499 provides, in relevant part, that "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever" shall be liable for business conspiracy. And § 18.2-450 creates a civil cause of action for "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499."

A statutory business conspiracy plaintiff "must at least allege an unlawful act or unlawful purpose" on the part of the alleged conspirators. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (quotation marks and citation omitted). However, to establish the intent element, "[i]t is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, *i.e.*, ill-will, hatred, or spite directed toward the plaintiff. Rather, a plaintiff must establish . . . only that the conspirators acted with legal malice, *i.e.*, intentionally, purposely, and without lawful justification." *Id.* (quotation marks and citations omitted). Thus, a plaintiff can state a claim for business conspiracy under Va. Code § 18.2-499–500 by plausibly alleging that Empire agreed with one or more people to intentionally take an unlawful act that harmed another person professionally.

Here, the Complaint alleges Empire worked with "third-party graphic designers, independent contractors, DJs, social media consultants and/or others" to create and publish "advertisements using [the] [p]laintiffs' repurposed images." ECF No. 1 ¶ 82. It further alleges that Empire's purpose was to "deprive [p]laintiffs of the fair market value of their professional modeling services that they would have

7

obtained had Empire and its co-conspirators operated through legal channels, and thus secure for Empire free advertising." *Id.* ¶ 88. Empire's use of the plaintiffs' images was unlawful for the reasons explained in Part III.B., above. And the plaintiffs sufficiently pleaded harm in the form of lost earnings and reputational injury. *Id.* ¶ 95–96. Therefore, the Complaint makes out a *prima facie* claim under Virginia Code § 18.2-499, and default judgment will be **GRANTED** as to Count Two.

### D.   Counts Three and Four: Lanham Act Claims

The plaintiffs are entitled to default judgment on both their claims under the Lanham Act. Section 43(a) of the Lanham Act provides that:

> (1)   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B)   in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To maintain a claim for false association or false advertising under the Lanham Act, "a plaintiff's claim must fall within the zone of interests protected by the statute." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 707 (4th Cir. 2016) (quotation marks omitted). "The scope of the zone of interests is not especially demanding, and the plaintiff receives the benefit of any doubt." *Id.* (quotation marks omitted).

To determine if a plaintiff falls within the relevant zone of interests, courts have looked to the Lanham Act's statement of purpose. *Belmora*, 819 F.3d at 707. The statement provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U.S.C. § 1127. The Court finds that the plaintiffs adequately allege that they fall within the Lanham Act's one of interests, because they assert that Empire's unauthorized use of their images misled and deceived customers, thereby affecting the customers' purchasing decisions. ECF No. 1 ¶¶ 100–101.

### i.   *False Advertising*

With respect to a false advertising claim under the Lanham Act, a plaintiff must establish that:

9

(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;

(2) the misrepresentation is material, in that it is likely to influence the purchasing decision;

(3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;

(4) the defendant placed the false or misleading statement in interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298–99 (4th Cir. 2017).

In Count Three, the plaintiffs allege that Empire's advertisements were misleading because they made it appear as if the plaintiffs worked at or endorsed Empire. ECF No. 1 ¶¶ 98–107. Because that was the alleged purpose of Empire's misuse of the images, and because the advertisements were posted publicly for customers to see, the Court can reasonably infer that the ads were likely to deceive consumers and influence their decisions. *See id.* ¶¶ 110, 104, 113. Empire placed these misleading ads in interstate commerce by publishing them on the Internet. ECF No. 1-2; *see Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 574 (E.D. Va. 2016) ("use of the internet to communicate a statement is certainly interstate commerce within the meaning of the Lanham Act"). Finally, the plaintiffs allege they were injured because they were not compensated for the value of their modeling services and because Empire's use of their images damaged their reputations in the market. *Id.* ¶ 95–96. Thus, the Complaint makes out a

plausible claim for false advertising. *See Verisign,* 848 F.3d at 298–99. Accordingly, default judgment will be **GRANTED** as to Count Three.

### ii.    *False Association*

To establish a false association claim under the Lanham Act, a plaintiff must plead that:

> (1) the defendants used the plaintiff's name or image image[2] "in interstate commerce in connection with goods and services;"
>
> (2) such use was "likely to cause confusion, mistake or deception as to the association of the [d]efendant with the [p]laintiff, or the sponsorship, or approval of [the] [d]efendant's goods or services; and
>
> (3) the plaintiff "is, or is likely to be, damaged by these acts."

*Geiger v. Aberca Family Inc.*, No. 3:21-cv-771, 2022 WL 4242838, at *10 (E.D. Va. July 29, 2022). The Complaint adequately alleges the interstate commerce and harm elements for the reasons explained in Part III.D.i., above. And Count Four asserts that Empire's use of the plaintiffs' images created the false impression that the

---

[2] Courts in this district have routinely framed this element in terms of the plaintiff's "name or a word." *E.g., Geiger*, 2022 WL 4242838, at *10; *Ullah v. Linkenauger*, No. 1:20-cv-634, 2020 WL 9459338, at *3 (E.D. Va. Oct. 2, 2020). But it is clear that use of an image can form the basis for a false association claim as well, at least when the plaintiff is recognizable enough to the public that their image alone would associate them with the defendant. *See* 15 U.S.C. § 1125(a)(1) (referring to any word, term, name, *symbol, or device*, or any combination thereof) (emphasis added); *Geiger*, 2022 WL 4242838, at *10 (applying the standard to a plaintiff's image, based on a finding that the plaintiff was famous enough to be recognized). The Court finds that the Complaint sufficiently alleges the plaintiffs are well known enough that improper use of their images is actionable for purposes of a false association claim. *See* ECF No. 1 ¶¶ 23, 26, 29, 32, 35, 38 (describing highlights of each plaintiff's modeling career).

plaintiffs were affiliated with the club. *Id.* ¶¶ 104, 113. Therefore, the plaintiffs adequately allege a false association claim. Accordingly, the default judgment will be **GRANTED** as to Count Four.

### E.   Relief

#### i.   *Damages*

The Complaint demands actual damages for each cause of action as well as punitive damages for the state-law claims. ECF No. 1 at 20. It also suggests that the plaintiffs may be entitled to treble damages and attorneys' fees under the Lanham Act. *Id.* ¶ 97. However, at default judgment, the plaintiffs only explicitly request the actual damages their expert calculated. ECF No. 10 at 6. The plaintiffs make no distinction among the four claims in the Complaint and make no argument with respect to treble damages. *Id.* Therefore, the Court will evaluate the proof the plaintiff has submitted and, as appropriate, award damages collectively as to all four counts.

To prove damages, the plaintiffs submitted the report of Stephen Chamberlin, an expert in "the valuation of image uses, model and public personality career valuation[,] and the effective rates of work and valuation." ECF No. 10 at 6; *see* ECF No. 10-1 (report). Chamberlin's report provides a retroactive valuation of the compensation each plaintiff should have received for Empire's use of their images, and he attaches a chart that details how he arrived at his recommendations. ECF No. 10-1 at 24. To populate the chart, Chamberlin relied, in part, on the information contained in screenshots of the plaintiffs' images on Empire's various social media accounts. *Compare* ECF No. 10-1 at 24 *with* ECF No. 10-1 at 25–45.

In addition to the value of an initial contract with each plaintiff, Chamberlin's estimates provide for "rollover" fees, which amount to "repayment of [the] original fee[] . . . every year of use." *Id.* at 12, 24. Although Chamberlin appears to claim that a model would be paid a whole new annual fee for any use of their image that extends into a new year, the Court finds that pro-rating the fee to cover the exact number of days an image is in use is a more reasonable method for calculating damages in the present case.[3]

Overall, however, the Court finds that Chamberlin's formula for assessing fair market value is an adequate method of calculating damages for a plaintiff's image. *See Canas v. Babe's S., Inc.*, No. 3:21-cv-942, 2023 WL 2885197, at *4 (N.D. Fla. Feb. 22, 2023) (Chamberlin's methodology for calculating damages sufficient to establish damages for default judgment on claims brought by models against club under the Lanham Act), *report and recommendation adopted*, 2023 WL 4352078 (July 5, 2023); *Sampedro v. Anyado Grp., LLC*, No. 1:22-cv-1402, 2023 WL 1398577, at *9 (D.D.C. Jan. 31, 2023) (Chamberlin's affidavit offered a reasonable calculation of damages); *Hinton v. Completely Innocent LLC*, 1:21-cv-1019, 2022 WL 80049, at *5 (D. Ariz. Jan. 7. 2022) (concluding, at default judgment, that Chamberlin's affidavit offered "thorough, well-founded, and sufficient evidence of the actual damages").

That said, Chamberlin's report has some factual discrepancies. Chamberlin incorrectly lists the length of time Plaintiffs Gibson, Sampedro, Hinton, and Canas's

---

[3] Further, awarding damages inclusive of rollover fees would afford the plaintiffs substantial additional recovery that does not appear to be reflected in Chamberlin's actual calculations.

13

images were posted.[4] *Compare* ECF No. 10-1 at 24 (asserting Plaintiff Gibson's images were posted for one year, Plaintiff Sampedro's images were posted for three years, Plaintiff Hinton's images were posted for two years, and Plaintiff Carver's images were posted for two years) *with* ECF No. 12 at 2 (clarifying that Plaintiff Gibson's images were posted for less than one year, Plaintiff Sampedro's images were posted for one year, Plaintiff Hinton's images were posted for one year, and Plaintiff Carver's images were posted for less than one year). Based on Chamberlin's report and the Court's independent assessment of the evidence, the Court finds as follows:

Plaintiff Moreland's day rate is $50,000. ECF No. 10-1 at 24. Her image was used in two advertisements ("A" in chart) posted on Empire's social media accounts ("SM" in chart). *Id.* at 26–27. Accordingly, the fair market value for Plaintiff Moreland's image is $100,000.[5] This image, through two advertisements, stayed online for at least 1061 days or 2.90 years. Therefore, the total value owed to Plaintiff Moreland for the usage of her image is $290,000.

---

[4] The defendants' social media accounts for Empire "have been taken down," and plaintiffs "do not know the date [the unauthorized images] were taken down" from the defendant's social media pages or "whether the advertisements . . . remain[ed] posted as of the date they were taken down." ECF No. 12 ¶ 35. Thus, the Court will construe the date each image was captured on the defendants' website as the cutoff date for each plaintiff's damages.

[5] The fair market value for each plaintiff is calculated by multiplying her day rate by the number of "usages." ECF No. 10-1 ¶ 33. In Plaintiff Moreland's case, her day rate (per image) is $50,000, and Empire used her image twice (once in an advertisement and once in a social media post), resulting in a fair market value of $100,000.

Plaintiff Gibson's day rate is $5,000. ECF No. 10-1 at 24. Her image was used in one advertisement posted on the defendants' social media accounts. *Id.* at 29. Accordingly, the fair market value for Plaintiff Gibson's image is $10,000. The advertisement "was posted on December 22, 2018, and captured on May 28, 2019." ECF No. 12 at 2. That amounts to a total time posted of 162 days or 0.44 years. In sum, the defendants must pay Plaintiff Gibson $10,000.

Plaintiff Sampedro's day rate is $7,500. ECF No. 10-1 at 24. Her image was used in one advertisement posted on Empire's social media accounts. *Id.* at 31–32. Accordingly, the fair market value for Plaintiff Sampedro's image is $15,000. The advertisement "was posted on February 16, 2018, and captured on May 28, 2019." ECF No. 12 at 2. That amounts to a total time posted of 467 days or 1.28 years. Therefore, Empire must pay Plaintiff Sampedro $19,200 for the unauthorized use of her image.

Plaintiff Hinton's day rate is $7,500. ECF No. 10-1 at 24. Her image was used in two advertisements posted on Empire's social media accounts. *Id.* at 34–35. Accordingly, the fair market value for Plaintiff Hinton's image is $15,000. The first advertisement "was posted on September 2, 2017, and captured on May 28, 2019." ECF No. 12 at 2. That amounts to a total time posted of 634 days or 1.74 years. Therefore, Plaintiff Hinton is owed $26,100 for the use of her image in the first advertisement.

The second advertisement using Plaintiff Hinton's image "was posted on January 27, 2018, and captured on May 28, 2019." ECF No. 12 at 2. That amounts to

a total time posted of 486 days or 1.33 years. Therefore, the total fair market value owed to Plaintiff Hinton for the use of her image in the second advertisement is $19,950. In sum, Empire must pay Plaintiff Hinton $46,050 for the unauthorized use of her image.

Plaintiff Carver's day rate is $7,500. ECF No. 10-1 at 24. Her image was used in one advertisement posted on Empire's social media accounts and for an "extra usage." *Id.* at 24, 37–41. Neither Chamberlin nor the plaintiffs define what an "extra usage" is. The Court finds the plaintiffs did not adequately justify damages for 'extra usage,' so the Court will not award damages for such use. *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570 ); *see Grabert*, 8 F. Supp. 3d at 736 (applying the *Twombly* and *Iqbal* standard in the context of default judgment). Accordingly, Plaintiff Carver's fair market value is calculated based on two usage categories for a total of $15,000. The advertisement containing Plaintiff Carver's image "was published in or around March 2019, and captured on March 27, 2020." ECF No. 12 at 2. That amounts to a total time posted of 392 days or 1.07 years. Therefore, in sum, the defendants must pay Plaintiff Carver $16,050 for the unauthorized use of her image.

Plaintiff Canas's day rate is $5,000. ECF No. 10-1 at 24. The fair market value for her image is $10,000, based on social media and advertising usage. *Id* at 31–32. The advertisement "was published on September 22, 2018, and captured on May 28, 2019." ECF No. 12 at 2. That amounts to a total time posted of 248 days or 0.68 years. Thus, Empire must pay Plaintiff Canas $10,000.

16

| Plaintiff | Day Rate | Exhibit Location | Usage Types | Fair Market Value | Time Posted (Years) | Total Value Owed |
|-----------|----------|------------------|-------------|-------------------|---------------------|------------------|
| Moreland | $50,000 | ECF No. 1-2 at 2–3 | A, SM | $100,000 | 2.90 | $290,000 |
| Gibson | $5,000 | ECF No. 1-2 at 5 | A, SM | $10,000 | <1 | $10,000 |
| Sampedro | $7,500 | ECF No. 1-2 at 7–8 | A, SM | $15,000 | 1.28 | $19,200 |
| Hinton | $7,500 | ECF No. 1-2 at 10 | A, SM | $15,000 | 1.74 | $26,100 |
| | | ECF No. 1-2 at 11 | A, SM | $15,000 | 1.33 | $19,950 |
| Carver | $7,500 | ECF No. 1-2 at 13–17 | A, SM | $15,000 | 1.07 | $16,050 |
| Canas | $5,000 | ECF No. 1-2 at 19–21 | A, SM | $10,000 | <1 | $10,000 |
| **TOTAL** | | | | $180,000 | | $391,300 |

Empire chose to bypass contract negotiations and nonetheless use the plaintiffs' images to advertise their club. Accordingly, the Court finds that the economic and reputational injury described in Chamberlin's report and as modified by the Court supports a total damages award of $391,300.

### *ii.* *Attorneys' Fees*

The plaintiffs are entitled to attorneys' fees under the Lanham act because Empire's nonresponse makes this case "exceptional." 15 U.S.C. § 1117(a). The Lanham Act permits a district court to award reasonable attorneys' fees to a "prevailing party" in "exceptional cases." *Id.* There is no "precise rule or formula" for determining whether a case is "exceptional." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (quotation marks omitted). "An exceptional case is simply one that stands out from others with respect to the substantive

strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* (quotation marks omitted); *see also Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (adopting the *Octane Fitness* standard in a Lanham Act case).

The Fourth Circuit has suggested a three-part analysis to determine whether a case is "exceptional" within the meaning of § 1117(a):

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable;
>
> (2) the non-prevailing party has litigated the case in an unreasonable manner; or
>
> (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

*Citi Trends, Inc. v. Coach, Inc.*, 780 F. App'x 74, 80 (4th Cir. 2019) (unpublished).

The Court finds that Empire did "not litigate[] this case in a reasonable manner considering that it has not responded at all." *Hilton Worldwide, Inc. v. Global Advertising, Inc.*, No. 1:15-cv-1001, 2016 WL 8223436, at *9 (E.D. Va. Apr. 8, 2016). Such disregard for this litigation creates an exceptional case that "stands out from others" and justifies an award of reasonable attorneys' fees. *Octane Fitness, LLC*, 572 U.S. at 554.

While the plaintiffs seek an award for costs and attorneys' fees, they ask for "a reasonable time following entry of the Court's judgment to" quantify their request. ECF No. 10 at 6. The Court will therefore defer an award of costs and fees until it receives an appropriate petition from the plaintiffs.

18

### F.    Injunctive Relief

The plaintiffs are also entitled to a permanent injunction. First, they have demonstrated the existence of irreparable injury. The plaintiffs spent years developing their respective brands. *See* ECF 1 ¶¶ 23–40. Empire's use of the plaintiffs' images created the false impression that they work at, endorse, or are affiliated with Empire, thereby "mak[ing] the advertisement a personal endorsement . . . ." ECF 10-1 ¶ 29. The plaintiffs demonstrate that none of their "career[s] would have been positively impacted by appear[ing] in the [Empire] advertisements" and that "each of their association[s] with Empire could be detrimental to their commercial prospects." *Id.* ¶ 15. This type of association "adversely affects [the] [p]laintiffs' personal and professional reputations, thus satisfying the irreparable harm element." *Nobriga v. La Kumbala Lounge & Rest., Inc.*, No. 7:23-cv-005, 2024 WL 2951753 (E.D.N.C. May 23, 2024), *report and recommendation adopted*, No. 7:23-cv-005, 2024 WL 2947704 (E.D.N.C. June 11, 2024).

The Fourth Circuit has recognized that the second requirement—inadequate remedies at law—necessarily overlaps with the first. *Phelps*, 492 F.3d at 544 (analyzing the first and second prongs together). Given the nature of the claims at issue, damages are calculable but they are not a sufficient remedy here. Were the defendants to continue exploiting the plaintiffs' images in the future, there would be countless harms that could not be undone by the payment of money damages. By using the plaintiffs' images without their consent, the defendants would effectively force the plaintiffs to be forever associated with Empire in the eyes of any consumer

who saw the advertisement, causing harm to the plaintiffs' dignity, personhood, and reputation.[6] Thus, the Court finds that damages are an inadequate remedy at law.

Next, the Court must consider the balance of the hardships between the plaintiffs and Empire. A permanent injunction would force Empire to cease using the plaintiffs' images to advertise their establishments without authorization. The defendants would be left with two options: They could either stop using the plaintiffs' images or negotiate a contract with them and, if successful, continue using the images for advertising. Neither option is unduly onerous. Furthermore, Virginia Code § 8.01-40 already requires Empire to refrain from using the plaintiffs' images without authorization. Thus, the impact of an injunction on Empire is minimal, because an injunction would merely require them to comply with an existing legal obligation.

In contrast, the plaintiffs will face hardship if no permanent injunction is issued, because of the difficulty enforcing the law against unauthorized use of their images and likenesses. This hardship is most obvious when considering what would be required for the plaintiffs to discover Empire's violation—a constant presence at the establishment and a watchful eye over Empire's social media accounts to determine whether the plaintiffs' images are used. *Id.* The Court finds that the balance of the hardships weighs in favor of granting an injunction.

---

[6] To be clear, the Court's conclusion on this element should not be taken to suggest that association with a club like Empire is inherently harmful to one's dignity. Rather, the harm arises from depriving the plaintiffs of the right to choose for themselves with whom they wish to publicly associate.

Finally, as the Lanham Act's statement of purpose implicitly recognizes, public interest favors preventing the defendants from unlawfully using the plaintiffs' images and protecting the plaintiffs against false advertising, false association, misappropriation, and unfair trade practices. *See* 15 U.S.C. § 1127.

Because all four requirements are satisfied, the Court finds that plaintiffs are entitled to a permanent injunction. Accordingly, Empire and its employees will be **ENJOINED** from using the plaintiffs' images without authorization.

## IV.   CONCLUSION

Plaintiffs Andra Cheri Moreland, Cielo Jean Gibson, Claudia Sampedro, Jessica Hinton, Ina Schnitzer, and Paola Canas's Motion for Default Judgment (ECF No. 18) is **GRANTED.**

The Court **DIRECTS** the Clerk to enter judgment in favor of the plaintiffs against Defendant Pal of Mine Corp. d/b/a Club Empire as described herein.

It is **ORDERED** that Defendant Pal of Mine Corp. d/b/a Club Empire pay damages in the total amount of $391,300.[7]

It is **FURTHER ORDERED** that Defendant Pal of Mine Corp. d/b/a Club Empire and its employees are permanently **ENJOINED** from using any plaintiff's image or likeness in commercial advertising without proper authorization.

---

[7] The plaintiffs' motion requests default judgment only against Defendant Pal of Mine Corp. d/b/a Club Empire. ECF No. 10 (referring throughout to the "[d]efendant," singular and making no mention of Does 1 through 5). Contemporaneous with this Opinion and Order, the Court will issue an order to show cause why Does 1 through 5 should not be dismissed as defendants.

Counsel for the plaintiffs is **DIRECTED** to file a supplemental brief that provides itemized billing information, to include the total hours billed and standard hourly billing rates for their work, and costs relating to this matter, within 21 days of the date of entry of this Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to Defendant Pal of Mine Corp. d/b/a Club Empire and to all counsel of record.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
August 26, 2024